IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ARCHER WESTERN CONTRACTORS, LTD., ) ) ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 07-00013-CG-B |
| ) | |
| LOUPIN CONSTRUCTION, INC., ) ) | |
| Defendant. ) | |

### ORDER

This matter is before the court on the issue of damages. Archer Western Contractors, Ltd. ("Archer Western") obtained a default against sued Loupin Construction, Inc. ("Loupin") and subsequently filed a motion to prove-up its damages by affidavit. (Docs. 54 and 55). This court granted the motion to prove-up damages by affidavit. (Doc. 56). Archer Western filed its affidavit in support of the damages it seeks and, at the court's request, a supplemental memorandum of law explaining why it is legally entitled to the damages it established by affidavit. (Docs. 57, 58, and 59).

### I.    GEORGIA LAW APPLIES

As a federal court presiding over this diversity matter, this court is obliged to follow Alabama's choice of law rules to determine whether Alabama or Georgia law applies to the determination of damages in this case. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998). Archer Western argues that Georgia law applies because the contract between Archer Western and Loupin provides that Georgia law governs the relationship between the parties. (Doc. 59, p. 3, Doc. 57-2, p. 19, ¶ 11.2).

"Alabama follows the principle of 'lex loci contractus,' which states that a contract is

governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. Alabama law has long recognized the right of parties ot an agreement to chose a particular state's laws to govern an agreement." Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 206 (Ala. 1991). See also Ex parte HealthSouth Corp., 974 So. 2d 288, 295 (Ala. 2004) ("'[I]n a contractual dispute, Alabama law would have us first look to the contact to determine whether the parties have specified a particular sovereign's law to govern.'"). This general rule is qualified. When the parties specify the law of a state to govern a contract, that law will "control the validity and construction of the contract [but] the law of the <u>forum</u> operates with respect to the remedy available to enforce the contract." Hughes Associates, Inc. v. Printed Circuit Corp., 631 F. Supp. 851, 855 (N.D. Ala. 1986) (emphasis in original) (citing Macey v. Crum, 30 So. 2d 666, 669 (Ala. 1947) and Western Union Tel. Co. v. Hill, 50 So. 248, 251 (Ala. 1909)).

Although this court previously employed a contractual choice of law analysis to determine that Alabama's version of a "door-closing statute" took precedence over Georgia's version of a "door-closing statute," barring Loupin's counterclaim against Archer Western (doc. 40, pp. 9-20), there is nothing before the court to show that a similar analysis is appropriate for ascertaining the amount of damages due for breach of the contract. The court therefore finds that the parties' specification in the contract that Georgia law applies to their agreement, and therefore to the damages available in this dispute.

Pursuant to Art. 8.1.1 of the subcontract, Loupin breached its agreement with Archer Western by abandoning the Project in December 2007, prior to completing its work. "Performance, to be effectual, must be accomplished by the party bound to perform, or by his

agent where personal skill is not required, or by someone substituted, by consent, in his place, and must be substantially in compliance with the spirit and the letter of the contractand completed within a reasonable time." O.C.G.A. 13-4-20.   The court finds that as a result of Loupin's breach of the subcontract, Archer Western is entitled to damages set forth in the Affidavits of Millard C. Faulkner. See also O.C.G.A. 13-6-1.

Archer Western is entitled to the costs it incurred to repair and complete Loupin's work as a result of Loupin's abandonment of its subcontract work. Generally, the proper measure of damages for defective workmanship would be the cost of repair of the defect." Graves v. Diambrose, 243 Ga. App. 802, 803, 534 S.E.2d 490 (2000) (citing Paul Davis Systems &c. v. Peth, 201 Ga. App. 734, 736(1) 412 S.E.2d 279 (1991)). Likewise, [t]he measure of damages for defective or incomplete construction is the difference between the contract price and the reasonable and necessary cost to have the work completed in accordance with terms stipulated, or the reasonable costs of defect repair." Webb v. Hancock Plumbing & Heating Co., Inc., 194 Ga. App. 715, 391 S.E.2d 697, 699 (1990)(citing Jack v. Heard Contractors v. Moriarity, 185 Ga.App. 317, 318(2), 363 S.E.2d 822; Hutto v. Shedd, 181 Ga.App. 654, 656(2), 353 S.E.2d 596 (1987); Gainesville Glass Co. v. Don Hammond, Inc., 157 Ga.App. 640, 642, 278 S.E.2d 182 (1981)).  Therefore, in this case, Archer Western is entitled to $78,754.34 for the costs it incurred in having Bennett and Brosseau Roofing, Inc. complete Loupin's flashing work on the Project.

Thomas Roofing, Inc. was another subcontractor on the Project.  Archer Western expanded Thomas Roofing, Inc.'s scope of work to include installing 57 squares of the copper roof which was included in Loupin's scope of work.  Archer Western paid Thomas

Roofing an additional $132,338 to complete this portion of Loupin's work.  Archer Western purchased ice and water shield materials from Construction Materials Limited, Inc. for $9,384.90 which were included in Loupin's scope of work. To complete Loupin's work, Archer Western purchased $49,549.15 of copper shingles from Reinke Shakes a division of Jame Kari, LLC as a result of Loupin's underestimation of these materials.   Likewise, AWC incurred an additional $7,897.18 for materials from various vendors as a result of Loupin's incomplete and deficient work.

In determining its costs to repair and complete Loupin's work, Loupin is entitled to a credit of its contract balance of $112,628.  Archer Western is also entitled its overhead, profit and attorney's fees. "In a suit upon a contract no element of damages is recoverable unless it can reasonably be considered to have been within the contemplation of the parties at the time they entered into the contract." Horwitz v. Teague, 77 Ga. App. 386, 389 48 S.E.2d 697(1948). Pursuant to Art. 12.5 of the contract, Archer Western is entitled to attorney's fees arising out of a breach of the subcontract.   Archer Western incurred attorney's fees in the amount of $71,629.40.

Pursuant to Art. 8.1.2 of the subcontract, Archer Western is entitled to reasonable overhead and profit to repair and complete Loupin's subcontract work.  Archer Western's overhead on the Project as a result of Loupin's deficient and defective work amounts to $385,660.77.  "[W]hile exact figures need not be submitted, proof of special damages must be sufficient to enable the jury or the trial judge at a bench trial as the trier of fact as well as the law to reasonably estimate their amount without resort to guesswork." Song v Brown, 255 Ga. App. 562, 563, 565 S.E.2d 884 (2002). In this case, the overhead costs are based on Archer Western's actual overhead costs throughout the Project on a per day basis and multiplied by the 30 days of

delay Loupin caused Archer Western.  Therefore, this element of Archer Western's damages does not force the court to resort to guesswork and, thus, is recoverable.

Art. 8.1.2 of the subcontract also provides Archer Western reasonable profit on the costs associated with Loupin's performance failures.  At ten percent profit, customary in the construction industry, Archer Western is entitled to $65,967.24 in profit associated with Loupin's performance failures.

Archer Western expects to be assessed with liquidated damages of $1,140,000 by the owner for turning over the Project 240 days late.  Of these 240 days, 30 are attributable to Loupin's deficient and incomplete work for which $142,500 shall become due and owing. Pursuant to Art. 5.5 of the subcontract, Archer Western is entitled to these damages. As the Prime Contract provides for liquidated damages in a sum certain, these liquidated damages are not speculative and therefore recoverable from Loupin.  See O.C.G.A. 13-6-7. "The party who defaults on a contract has the burden of proving that a liquidated damages provision is an unenforceable penalty." Turner v. Atlanta Girls' School, Inc., 288 Ga. App. 115, 116, 653 S.E.2d 380 (2007). Loupin has not objected to these liquidated damages.

Finally, pursuant to the broad language in the subcontract, Loupin must indemnify Archer Western for all losses, costs, liabilities, expenses, damages and attorney's fees arising out of Loupin's performance on the Project.  Art. 9.1.2 of the subcontract provided:

> Subcontractor shall indemnify, defend and hold harmless Contractor, Owner, Engineer and their agents, sureties and employees from and against any and all demands, claims, suits causes of action, losses, penalties, liabilities, costs, damages, attorney's fees, and expenses of any nature arising out of or resulting from Subcontractor's performance of the work required by this Subcontract . . .

Therefore, according to the subcontract, Archer Western is also entitled to indemnification by Loupin from the damages set forth in its Affidavits of Millard C. Faulkner.

In sum, Archer Western is entitled to $831,052.98 in damages after applying a $112,628 credit to Loupin for the subcontract balance as demonstrated infra.

| | |
|---|---|
| $ 78,754.34 | Bennett & Brosseau Roofing, Inc. |
| $132,338.00 | Thomas Roofing, Inc. |
| $ 9,384.90 | Ice and water shield materials from Construction Materials Limited, Inc. |
| $ 49,549.15 | Copper Shingles form Reinke Shakes a division of Jame Kari |
| $ 7,897.18 | Various venders for materials |
| $385,660.70 | Archer Western's extended overhead as a result of Loupin's work |
| $ 65,967.24 | 10% profit associated with Completion of Loupins work |
| $142,500.00 | Time related damages |
| $ 71,629.40 | Legal Fees |
| $943,680.98 | |
| ($112,628.00) | Subcontract Balance |
| $831,052.98 | Total Damages |

A default judgment in this amount will be entered by separate Order.

**DONE** and **ORDERED** this 31st day of March, 2010.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

6